## Com. v. Garford Truck and 42 Pasteboard Cartons.

*Prohibition enforcement—Forfeiture of vehicle used in transporting intoxicating liquor—Owner in possession in ignorance of intoxicating character of liquor—Act of March 27, 1923.*

Under the Prohibition Enforcement Act of March 27, 1923, P. L. 34, the owner in possession of a vehicle which has been seized while being used for the transportation of intoxicating liquor is bound to know the nature and alcoholic content of the liquor which he is transporting, and is not entitled to the return of the vehicle, although misinformed as to the alcoholic content of the liquor.

Petition for condemnation of motor-vehicle. Q. S. Phila. Co., May Sess., 1924, No. 13.

*Charles Edwin Fox, Joseph K. Willing* and *John A. Boyle,* Assistant District Attorneys, for Commonwealth.

*Alexander Love, Jr.,* for claimant.

Gordon, Jr., J., July 3, 1924.—This is a petition for the condemnation of a motor-vehicle under the Act of March 27, 1923, P. L. 34. The vehicle was seized by the police while transporting intoxicating liquor, and was at the time in the possession of the owner and claimant. These facts are undisputed. The claimant asks for the return of the vehicle upon the ground that, notwithstanding it was in his possession when seized and was being used by him for the transportation of beer, he was informed by the person who engaged him to transport the beer that it was near-beer, and that he did not, therefore, know he was transporting intoxicating liquor or consent to do so.

This raises the question whether an owner in possession of a vehicle seized while being used by him in the transportation of intoxicating liquor can recover the conveyance on proof that he did not know what he was transporting or its alcoholic content. We do not think so. Section 11 *(A')* of the act provides that: "Upon the transportation of intoxicating liquor in violation of this act, the wagon, buggy, team, motor-vehicle, water or air craft, or other vehicle or receptacle on which it is so transported, shall be forfeited to the Commonwealth subject to the provisions herein set forth."

Under this section, the vehicle is forfeited by the fact of illegal transportation. It is the unlawful instrument of a criminal act and becomes a deodand, forfeited to the Commonwealth as an instrumentality of crime, without regard to the person who has committed the crime. This view of the legal status of the outlawed vehicle is strengthened when we consider that clause *D* (1) of the same section provides that the condemnation proceedings for the determination of the forfeiture shall be *in rem,* in which the vehicle is the defendant. The owner's criminal guilt or innocence in the transaction is immaterial. The vehicle is condemned, not because the owner has committed a crime with it, but because it has been an instrument in the unauthorized and, therefore, unlawful transportation of contraband liquor.

The forfeiture of the inanimate objects with which a crime is committed is as ancient as the law of deodands, and is a well recognized exercise of the police power of the State. It cannot be doubted that, had the legislature seen fit, it might have stopped with the simple and absolute forfeiture of the vehicle without infringing any constitutional limitation of its power. It has not done so, however, but has ameliorated the severity of an absolute and unconditional forfeiture for the benefit of owners who are not in possession of the vehicle at the time the forfeiture is worked. This is accomplished by clause *D* of section 11 of the act, which defined the circumstances or exceptions under which the vehicle, although a forfeited deodand, may be returned

to the owner. By this clause the forfeiture is not remitted, but the court is empowered, notwithstanding it, to order the return of the vehicle. The claimant, therefore, must bring himself clearly within the exceptions to warrant our doing so.

This leads us to a consideration of the clause D (V) of section 11 of the act. It reads as follows: "(V) At the time of said hearing, if the Commonwealth shall produce evidence that the property in question was unlawfully possessed or used, the burden shall be upon the claimant to show (a) that he is the owner of said property; (b) that he lawfully acquired the same; (c) that it was lawfully used and possessed by him; and (d) in the event that it shall appear that the property was unlawfully used by a person other than the claimant, then such claimant shall show that such unlawful use was without his knowledge or consent."

Here, it will be observed, owners are divided into two classes: those in possession of the vehicle at the time of the seizure and those not in possession of it at that time. With respect to the former class, the right to secure its return is conferred only when the possession and use of the vehicle are lawful; while with respect to the latter class, the owner may secure its return upon satisfactory proof that he did not know that his property was being used illegally, or consent to such use. The claimant in this case falls into the first of these classes, that of an owner in possession. He can, therefore, do but one thing; show that the beer was being legally transported, because it was not intoxicating, and he has not done so. It is vigorously contended by counsel that his ignorance of the intoxicating character of what he was transporting establishes that he was not guilty of the crime of unlawful transportation of intoxicating liquor, and, therefore, justifies the return of the vehicle. Any other rule, it is contended, would work a hardship upon an innocent owner. We cannot agree with this reasoning. In the first place, the innocence of the owner has no relevancy in this proceeding in rem. And, in the second place, ignorance of what he was transporting would not be available to him as a defence in a criminal prosecution, for it has been repeatedly held that in offences of this character, such, for instance, as violations of the pure food laws, the former liquor laws relating to sales to minors, etc., and other offences which are merely mala prohibita, guilty knowledge and criminal intent are not necessary ingredients of the crime: Com. v. Weiss, 139 Pa. 247; Com. v. Sellers, 130 Pa. 32; Com. v. Holstine, 132 Pa. 357; Com. v. Zelt, 138 Pa. 615; Com. v. Goodman, 97 Mass. 117; and In re Carlson's License, 127 Pa. 330, in which Mr. Chief Justice Paxson said: "If we look into the opinion of the court for the facts, we find nothing to help the plaintiffs. From it we learn that the offence of which the plaintiffs in error were guilty was that of selling liquors to minors, and that the only excuse offered was that they did not know the persons to whom they sold were minors. This ignorance is not a sufficient excuse or justification under the act of assembly. If such a defence could be successfully interposed in such cases, there would be few convictions, and the law would be nullified for all practical purposes."

The owner performs the prohibited act at his peril; he is bound to know the character of what he is transporting. To hold otherwise would be unwarrantably to read into the act an exception which is not there, and, by throwing open the door to the easiest and grossest kind of fraud and perjury, to destroy completely the spirit and purpose of the enforcement provisions of this legislation. It may be that the law will work an apparent hardship in a few instances because of its general application, but we are not inclined to defeat the purpose of the law or to render it nugatory by reading into it exceptions

4 D. & C.

which are unknown, both to the act itself and to those well established principles of the criminal law which are applicable to offences of this character.

Having admitted the transportation of beer shown to be intoxicating, the claimant cannot set up his want of knowledge of its alcoholic content as a ground for asking the return of his vehicle, and the Commonwealth's petition for condemnation is, therefore, granted.